**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **VELETTA COLEMAN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 3:19-CV-2417-D-BH** |
| | § | |
| **BETSY DEVOS, U.S. SECRETARY** | § | |
| **OF EDUCATION,** | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge**[1] |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Based on the relevant filings and applicable law, the case should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B).

## I.  BACKGROUND

On October 11, 2019, Veletta Coleman (Plaintiff) filed this *pro se* action against Betsy Devos, the United States Secretary of Education (Secretary), in her official capacity; Educational Credit Management Corporation (ECMC); and Experian, Equifax, and TransUnion (Credit Bureaus) (collectively Defendants), alleging violations of her civil rights and various federal and state statutes in connection with her student loans.  (docs. 3; 12.)[2]

Plaintiff alleges that in November 1993, she was approved for Social Security benefits.[3] (doc. 12 at 5.)  After sustaining "another permanent medical injury in October 2006," she applied for a total and permanent disability discharge of her student loans with Sallie Mae, which was "eventually granted." (*Id.* at 6-7.)

---

[1] By *Special Order No. 3-251*, this *pro se* case was automatically referred for judicial screening.

[2] Although she initially only sued the Secretary, Plaintiff added ECMC, Experian, Equifax, and TransUnion as defendants in her answers to the magistrate judge's questionnaire.  (*See* doc. 12 at 2, 21.)

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

In 2018, Plaintiff filed for Chapter 13 bankruptcy protection. (*Id.* at 6.) On March 5, 2019, her bankruptcy lawyer received a letter from ECMC "falsely claiming" that she had not received a medical discharge by Sallie Mae due to lack of sufficient information from her doctor, and that her student debt had not been discharged. (*Id.*) On March 26, 2019, an account specialist with ECMC emailed Plaintiff, "falsely claiming 'default status' for the 'exact same' medically discharged student loans by Sallie Mae." (*Id.*) She immediately responded to ECMC, and on April 2, 2019, the account specialist sent her another email "'again' falsely claiming student loan default debt." (*Id.*)

Plaintiff alleges that the United States Department of Education (DOE) reinstated the "exact same" student loans "years later" plus "an overwhelming amount of superficial financial interests[sic] and fees." (*Id.* at 7.) She also alleges that DOE had been "collecting through ECMC, a non-profit debt collection agency," and that ECMC was involved in "false, negative and willful inaccurate superficial consumer debt publishing on behalf of [DOE]." (*Id.* at 17-18.) In September, October, and November 2019, DOE "maliciously, intentionally, negligently, wrongfully and unlawfully garnished $130.24 [ ] from [her] 'only' source of income from the Office of Personnel Management-Disability Retirement . . . in spite of [her] previously granted student loan permanent medical DISCHARGE via Sallie Mae in September 2006 and October 2006." (*Id.* at 4 (capitalization original).) She "filed complaints" against DOE and the three major "Consumer Credit Bureau's[sic]," and "repeatedly filed response letters of DISPUTE addressed to [ECMC]." (*Id.* (capitalization original).) She claims that they have "repeatedly, knowingly and maliciously continued to practice ongoing, malicious and intentional discrimination toward[ ] [her] [ ] based on disability, age, race/color, national origin, sex, intentional harassment and retaliation." (*Id.* at 5.)

Plaintiff alleges that DOE and ECMC, together with Credit Bureaus, "knowingly and

2

maliciously continue to violate" her civil rights under Title VI of the Civil Rights Act of 1964 (Title VI), Section 504 of the Rehabilitation Act of 1973 (Section 504), the Age Discrimination Act of 1975 (Age Discrimination Act), Title II of the Americans with Disability Act (ADA), and Title IX of the Education Amendments of 1972 (Title IX), as well as the Fair Credit Reporting Act (FCRA), the Equal Credit Opportunity Act (ECOA), the Fair Debt Collection Practice Act (FDCPA), Title III of the Consumer Credit Protection Act (CCPA), and the Texas Fair Debt Collection Practice Act (TDCPA).[4] (*Id.* at 5, 7.)  She seeks monetary damages for physical and mental pain and suffering, mental anguish/emotional distress, and past and future reasonable medical care. (*Id.* at 8.)  No process has been issued.

## II.  PRELIMINARY SCREENING

Because Plaintiff has been granted permission to proceed *in forma pauperis*, her complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2).  It provides for *sua sponte* dismissal if the Court finds the complaint "frivolous or malicious" or if it "fails to state a claim upon which relief may be granted."  A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28.  Courts follow the same analysis in determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) as when ruling on a motion to dismiss under Rule 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam).  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[4]Plaintiff cited Tex. Fin. Code §§ 396.352 and 396.353 and added claims under the TDCPA in her response to the questionnaire.  (*See* doc. 12 at 22.)

*Twombly*, 550 U.S. 544, 570 (2007).

### III. SOVEREIGN IMMUNITY

Plaintiff sues the Secretary in her official capacity only. (*See* doc. 12 at 3.)[5] Official capacity suits against federal employees are treated as suits against the United States. *See Ischy v. Miles*, 75 F. App'x 257, 258 (5th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Lawsuits against the United States are generally barred by sovereign immunity. *Id.* (citing *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999)). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009). The terms of the consent or waiver define the jurisdictional boundaries to entertain the suit. *Meyer*, 510 U.S. at 475. In general, the scope of a waiver of sovereign immunity is strictly construed "in favor of the sovereign." *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008). Plaintiff has the burden to show an "unequivocal waiver of sovereign immunity." *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

The ECOA contains a waiver of the United States' sovereign immunity. *See Moore v. U.S. Dep't of Agric. on Behalf of Farmers Home Admin.*, 55 F.3d 991, 994 (5th Cir. 1995) (citing 15 U.S.C. § 1691a(e), (f)) ("The plain language of the ECOA unequivocally expresses Congress'

---

[5]Plaintiff's answers to the questionnaire constitute an amendment to her complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

intentions: governmental entities are liable under the Act.").  Plaintiff fails to show a waiver of sovereign immunity for her claims under Title III of the CCPA, the Age Discrimination Act,[6] or Title IX, however.  *See St. Tammany Parish ex rel. Davis*, 556 F.3d at 315 (holding that the burden is on plaintiff to show federal government's consent to suit).  Moreover, courts have expressly found that the United States did not waive its sovereign immunity for claims under the FDCPA, the FCRA, Section 504, the ADA, Title VI,[7] or the TDCPA.  *See Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007) (holding that the FDCPA "does not contain an unequivocal and express waiver of sovereign immunity"); *Robinson v. United States Dep't of Educ.*, 917 F.3d 799, 806 (4th Cir. 2019), *cert. denied sub nom.*, 140 S. Ct. 1440 (2020) ("[The] FCRA's text and structure make clear that no unambiguous and unequivocal waiver of sovereign immunity has taken place."); *Daniel v. Nat'l Park Serv.*, 891 F.3d 762 (9th Cir. 2018) (same); *Lane v. Pena*, 518 U.S. 187, 193 (1996) (holding that the federal government did not waive its sovereign immunity against awards of monetary damages for violations of Section 504); *Dufresne v. Veneman*, 114 F.3d 952, 954 (9th Cir. 1997) (holding a claim for money damages against the federal government under the ADA was barred by the doctrine of sovereign immunity because the statute lacked an unequivocal waiver of sovereign immunity); *Brown v. U.S. Postal Inspection Serv.*, No. CIV.A. H-14-1756, 2014 WL 7072021, at *2 (S.D. Tex. Dec. 12, 2014) ("Title VI of the Civil Right Act . . . does not constitute a waiver of sovereign immunity."); *Williams v. Lambright*, No. 419CV00342ALMCAN, 2020 WL 949205, at *5 (E.D. Tex. Jan. 22, 2020), *adopted by* 2020 WL 924213 (E.D. Tex. Feb. 26, 2020)

---

[6]The Age Discrimination Act prohibits any program or activity receiving federal financial assistance from discriminating on the basis of age. *See* 42 U.S.C. § 6102.

[7]Title VI prohibits exclusion from participation in, denial of benefits of, and discrimination under federally assisted programs because of race, color, or national origin. *See* 42 U.S.C. § 2000d.

("[T]he United States, its agencies and employees (acting under the color of their office), are not subject to the [TDCPA] as there has been no waiver of sovereign immunity.").

Because Plaintiff fails to show unequivocal waiver of the United States' sovereign immunity for violations of Title III of the CCPA, the FDCPA, the FCRA, Section 504, the ADA, Title VI, the Age Discrimination Act, Title IX, or the TDCPA, these claims against the Secretary should be dismissed without prejudice for lack of jurisdiction.

## IV.  FAILURE TO STATE A CLAIM

Plaintiff also asserts claims against Defendants for violating the ECOA, as well as claims against ECMC and the Credit Bureaus for violating the FCRA, the FDCPA, Title III of the CCPA, Section 504, the ADA, Title VI, the Age Discrimination Act, Title IX, and the TDCPA. (*See* doc. 12.)

### A.    ECOA

Plaintiff generally alleges that Defendants violated the ECOA "by discriminating against [her] with respect to a credit transaction (from September 2006 and October 2006, to current) on the basis of race, color, sex, national origin, disability, [and] marital status."  (doc. 12 at 15.)  She contends that she applied, and was approved, for credit but she was denied "equal terms."  (*Id.*)

The ECOA makes it unlawful for a creditor to discriminate against any applicant with the ability to contract "on the basis of race, color, religion, national origin, sex, marital status, or age." 15 U.S.C. § 1691(a).  "For purposes of the statute, a violation occurs upon the happening of an adverse action by the creditor, i.e. the denial of the loan application." *Curley v. JP Morgan Chase Bank, N.A.*, No. 05-1304, 2007 WL 1343793, at *4 (W.D. La. May 7, 2007).  To establish a prima facie case under the ECOA, a plaintiff must show that (1) she was a member of a protected class,

(2) that she qualified for credit, and (3) she was rejected. *Cox v. Phase III, Investments*, No. H-12-3500, 2013 WL 3110218, at *6 n.3 (citing *Moore v. United States Dep't of Agriculture*, 857 F. Supp. 507, 513 (W.D. La. 1994), *vacated on other grounds*, 55 F.3d 991 (5th Cir. 1995)); *see Curely*, 2007 WL 1343793, at *4 (citing *Bhandari v. First Nat. Bank of Commerce*, 808 F.2d 1082, 1100 (5th Cir. 1987)). The ECOA has a five-year statute of limitations. *See* 15 U.S.C. § 1691e(f).

Here, Plaintiff fails to allege how she was discriminated against based on race, color, sex, national origin, disability, and marital status by any of the defendants. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (well-pleaded facts are needed to avoid dismissal). Significantly, she fails to allege that Defendants denied her credit, as required under the third element, and in fact acknowledges that she received a student loan from Sallie Mae. *See Cox*, 2013 WL 3110218, at *6 n.3. Additionally, Plaintiff's claim for violation of the ECOA is barred by the five-year statute of limitations, as she obtained her loan in 2006 and did not bring suit until over fourteen years later. *See* 15 U.S.C. § 1691e(f). Accordingly, Plaintiff's claims against Defendants based on violations of the ECOA should be dismissed.

## B.    FCRA

Plaintiff generally alleges that ECMC and the Credit Bureaus violated the FCRA, and are liable for willful noncompliance under 15 U.S.C. § 1681n, and for negative noncompliance under § 1681o. (doc. 12 at 14.)

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also Wilting v. Progressive County Mut. Ins. Co.*, 227 F.3d 474, 475 (5th Cir. 2000) (per curiam) (FCRA governs reporting of consumer credit information and permissible uses

of credit reports). Among other things, the FCRA "require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b); *see Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 465 (5th Cir.2006).[8] Although "the FCRA primarily regulates consumer credit reporting agencies, the statute also creates various obligations on 'furnishers of information' to provide accurate information to consumer credit reporting agencies." *Smith v. Nat'l City Mortgage*, No. A-09-CV-881 LY, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010) (citation omitted); 15 U.S.C. § 1681s–2.[9] Generally, the FCRA provides a private right of action for willful or negligent noncompliance against consumer reporting agencies and furnishers of information. *See* 15 U.S.C. §§ 1681n, 1681o.

Here, Plaintiff alleges that all her student loans were medically discharged, but ECMC and the Credit Bureaus continued to "willfully" report "old debt" in her consumer report. (doc. 12 at 13.) She claims that since 2009, she had "repeatedly disputed the Defendants' inaccurate, willful and malicious consumer credit reportings." (*Id.*) She alleges that they failed to notify her of the "negative credit information;" continued to "furnish and publish 'old, negative and inaccurate

---

[8]The FCRA defines a "consumer reporting agency" as:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(e).

[9]The FCRA does not define "furnisher of information." Courts in the Fifth Circuit "have defined the term broadly to mean 'an entity [that] transmits information concerning a particular debt owed by a consumer to a consumer reporting agency.'" *Alam v. Sky Recovery Services, Ltd.*, No. Civ.A. H-08-2377, 2009 WL 693170 at *4 (S.D. Tex. Mar. 13, 2009) (quoting *Thomasson v. Bank One*, 137 F. Supp.2d 721, 722 (E.D. La. 2001)).

information' as if it is 'new information' under various servicers;" continued to "give creditors inaccurate, negative and superficial financial information about [her];" failed to "follow guidelines for handling 'disputes;'" and failed to "send [her] notifications concerning her credit report and credit score." (*Id.* at 13-14.) Liberally construed, Plaintiff appears to assert claims against ECMC and the Credit Bureaus for violating 15 U.S.C. §§ 1681e(b), 1681i, and 1681s-2(b) of the FCRA.

### 1.  *Consumer Reporting Agencies*

"The FCRA imposes a duty upon consumer reporting agencies to conduct a reasonable [re]investigation into any information that a consumer disputes and that the agencies retain in his file." *Williams v. Credit Prot. Ass'n Trans Union, LLC*, No. CIV.A. 3:09-CV-1146-L (BH), 2009 WL 3719407, at *3 (N.D. TEX. Nov. 3, 2009) (citing 15 U.S.C. § 1681i; *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986)). Specifically, if a consumer directly or indirectly disputes "the completeness or accuracy of any item of information" contained in his consumer file "at a consumer reporting agency," "the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). The FCRA also requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's report. 15 U.S.C. § 1681e(b). It "does not impose strict liability for inaccurate entries," however. *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998). To recover for violations of § 1681e(b), "a plaintiff must demonstrate that an inaccuracy in her credit report resulted from [the agency's] negligent or willful failure to use reasonable procedures when the report originally was prepared, not upon reinvestigation." *Waggoner v. Trans Union, LLC*, No. CIV.A. 302CV1494G, 2003 WL 22220668, at *6 (N.D. Tex. July 17, 2003).

9

To the extent Plaintiff claims that any defendant is a credit reporting agency under the FCRA, she fails to allege that she contacted the agency to dispute the accuracy of her consumer file, and there are no factual allegations to support a claim that the alleged inaccuracies in her report were the result of the agency's failure to use reasonable procedures. *See* 15 U.S.C. §§ 1681i, 1681e(b). Further, she makes conclusory allegations but pleads no facts alleging that she had "repeatedly disputed" the defendants' inaccurate consumer credit reportings, and that they failed to follow guidelines for handling disputes. (*See* doc. 12 at 13.)

### 2.    *Furnishers of Information*

"Under § 1681s–2(a), furnishers of information may not knowingly provide inaccurate information to consumer reporting agencies." *Smith*, 2010 WL 3338537, at *14 (citing 15 U.S.C. § 1681s–2(a)). Once a furnisher is notified by a consumer reporting agency that the consumer has disputed the completeness or accuracy of information pursuant to § 1681i(a)(2), the furnisher must conduct its own investigation with respect to the disputed item, correct any inaccuracy, and notify the agency of the results of its investigation. 15 U.S.C. § 1681s–2(b). To recover against a furnisher for violations of § 1681s–2(b),[10] a plaintiff must show that: (1) she disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any

---

[10]"The language in the FCRA plainly and unambiguously states that a consumer does not have any remedies available for a claimed violation of § 1681s–2(a)" since it provides that such a violation "'shall be enforced exclusively' by certain federal agencies, and federal and state officials." *Patterson v. Long Beach Mortgage Co.*, No. CIV.A.3:07CV1602OBH, 2009 WL 4884151, at *4 (N.D. Tex. Dec. 15, 2009) (citing 15 U.S.C. § 1681s–2(a), (d)). Because there is no such limitation relating to § 1681s–2(b), "many federal courts in the Fifth Circuit have held that [in contrast to § 1681s–2(a),] § 1681s–2(b) creates a private right of action." *Davis v. Sallie Mae, Inc.*, CIV.A. No. 3:09-CV-00821, 2009 WL 2525303, at *3 (N.D. Tex. Aug. 18, 2009) (collecting cases). While expressly declining to rule on this issue, the Fifth Circuit has noted that "[n]othing in [§ 1681s–2] precludes a private right of action for violation of the investigation and reporting requirements of Section 1681s–2(b)." *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002).

inaccuracies, or notify the agency of the results of the investigation. *Smith*, 2010 WL 3338537, at

*15; *see also* 15 U.S.C. §§ 1681s–2(b), 1681i(a)(2).

To the extent Plaintiff claims that any defendant is a furnisher of information under the

FCRA, she fails to specify, and nothing in her questionnaire answers indicates, that a credit reporting

agency had notified the furnisher of a dispute. *See Young v. Equifax Credit Info. Servs., Inc.*, 294

F.3d 631, 639-40 (5th Cir. 2002) (holding claims under § 1681s-2(b) fail as a matter of law without

evidence that the furnisher received notice of a dispute from a consumer reporting agency).  While

she claims she contacted ECMC to dispute the allegedly discharged debt, a furnisher must receive

notice of a dispute *from a consumer reporting agency* to give rise to a claim under § 1681s-2(b). *See*

*Id.*; *see, e.g., Burress v. Chase Card*, No. 3:19-CV-01198-S-BT, 2020 WL 1216703, at *3 (N.D.

Tex. Feb. 18, 2020), *adopted sub nom. by* 2020 WL 1187175 (N.D. Tex. Mar. 11, 2020) ("[N]otice

of the dispute by the consumer himself does not trigger the information furnisher's duty under §

1681s-2(b)."); *Hanberry v. Chrysler Capital*, No. CV 20-246, 2020 WL 2219244, at *2 (E.D. La.

May 7, 2020) (dismissing claim where plaintiff had notified furnisher and credit reporting agencies

of a dispute but there were no allegations that furnisher received notice of a dispute from a credit

reporting agency).

Because Plaintiff fails to assert viable claims for violations of the FCRA, those claims

against ECMC and the Credit Bureaus should be dismissed with prejudice.  *See Ashcroft v. Iqbal*,

556 U.S. 662, 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice" to state a claim for relief.) (citing *Twombly*, 550 U.S. at 555);

*see, e.g., Shaunfield v. Bank of Am.*, No. 3:12-CV-3859-B, 2013 WL 1846885, at *2 (N.D. Tex. Apr.

24, 2013) (dismissing FCRA claim where the pleadings merely recited the elements of a violation

but failed to support those allegations with adequate factual content).

C.    **FDCPA**

Plaintiff generally alleges violations of the FDCPA by ECMC and the Credit Bureaus. (doc. 12 at 17.)

The FDCPA "is designed 'to eliminate abusive debt collection practices by debt collectors.'" *Watson v. Aurora Loan Services LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, at *7 (N.D. Tex. Aug. 21, 2012) (citing 15 U.S.C. § 1692(e)). It "prohibits a 'debt collector' from: 1) using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as 2) using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012), *adopted by* 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (citing 15 U.S.C. §§ 1692e and 1692f).

Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). There are two categories of debt collectors: those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Garcia*, 2012 WL 3847362, at *6 (citing *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008)). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Id.* (citing *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007)).

12

Notably, the FDCPA exempts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt *which was originated by such person*." 15 U.S.C. § 1692g(a)(6)(F) (emphasis added).  Under this exception, courts have concluded that "[t]he term 'debt collector' does not include lenders[,] ... the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Gipson v. JPMorgan Chase*, No. 3:13-CV-2477-L, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)). Additionally, "[t]he Act's legislative history reveals that section 1692a(6) was intended to cover independent debt collectors and not to cover the 'collection of debts such as ... student loans, by persons who originated such loans ... [or] others who service outstanding debts for others.'" *Russ v. United States Dep't of Educ.*, 364 F. Supp. 3d 1009, 1017 (D. Neb. 2018) (quoting S. Rep. No. 95-382, 95th Cong., 1st Sess. (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697-98, 1977 WL 16047)).

Here, Plaintiff asserts that DOE is collecting debt through ECMC, a "non-profit debt collection agency." (doc. 12 at 17.)  She alleges that ECMC engaged in "unlawful debt collection abuse and harassment tactics" through "repeated emails and telephone calls placed to both [her] and [her] daughter." (*Id.*)  She claims ECMC "continues to publish unfair debt and superficial debt" and "continues unfair debt collection by garnishing [her] disability monthly wages . . . for student loan debt that was previously discharged without a court proceeding." (*Id.*)

Plaintiff does not allege that any of the Credit Bureaus is a "debt collector" under the FDCPA.  Although she alleges that ECMC is a "non-profit debt collection agency," she does not

allege or assert any facts showing ECMC is a debt collector because it is engaged "in any business the principal purpose of which is the collection of any debts" or "regularly collect or attempt to collect ... debts." *See* 15 U.S.C. § 1692a(6).  Additionally, she does not assert, and nothing in the questionnaire answers indicates, that the student loan debt was assigned to ECMC or that it was in default at the time of the assignment. *See Garcia*, 2012 WL 3847362, at \*6-7 (dismissing FDCPA claims after finding that plaintiffs' recitation of the statutory language, without any facts in support, was insufficient to plausibly allege that the defendants were "debt collectors"); *see also Iqbal*, 556 U.S. at 678 (to state a claim, a plaintiff must plead sufficient facts to make the claim "plausible on its face").  Plaintiff therefore fails to state a claim for relief under the FDCPA against ECMC and the Credit Bureaus, and these claims should be dismissed for failure to state a claim.

### D.  CCPA

Plaintiff alleges that ECMC and the Credit Bureaus violated Title III of the CCPA because they have been garnishing her disability monthly wages for a discharged student loan even though "no court has issued a 'Writ of Garnishment,'" and because they have been ignoring her "dispute letters." (doc. 12 at 18.)

Title III of the CCPA, known as the wage garnishment provision, addresses "[c]ongressional concern over the unrestricted garnishment of wages with the resultant disruption in production, employment and consumption brought about in large part by predatory extensions of credit," as well as "the disparities from state to state in the application of the bankruptcy laws due to the different restrictions on garnishment within each state." *Smith v. Cotton Bros. Baking Co.*, 609 F.2d 738, 742 (5th Cir. 1980) (citing 15 U.S.C. § 1673).  "Courts have held no express or implied private right of action exists under the garnishment provisions of the [CCPA], which are enforced by the Secretary

14

of Labor." *Bush v. Frazier*, No. 2:18-CV-00732-SGC, 2019 WL 3305145, at *9 (N.D. Ala. July 23, 2019) (citing cases); *see Snapp v. U.S. Postal Service–Texarkana Mgmt. Sectional Ctr.*, 664 F.2d 1329, 1331 n. 7 (5th Cir. 1982) (noting that there is "considerable doubt that a private individual has an implied right of action under Title III").

Because there is no private right of action under Title III of the CCPA, Plaintiff fails to state a claim for relief against ECMC and the Credit Bureaus under this statute.

**E.    Federal Civil Rights Claims**

Plaintiff asserts claims for discrimination, harassment, and retaliation in violation of Title VI, the Age Discrimination Act, Title IX, the ADA, and Section 504.  (doc. 12 at 3, 7-8.)  She claims that her student loans were discharged in 2006, but ECMC and the Credit Bureaus continued to publish inaccurate, willful, negative and superficial "financial reportings" to all consumer credit bureaus. (*Id.* at 3, 19-20.)  She alleges that they have been working together to violate her civil rights, and that this "unlawful discrimination" was based on her disability, race, color, gender, age, and national origin. (*Id.*)

As noted, Title VI of the Civil Rights Act provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  The Age Discrimination Act prohibits any program or activity receiving federal financial assistance from discriminating on the basis of age. *See* 42 U.S.C. § 6102.  Title IX of the Education Amendments provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20

U.S.C. § 1681(a). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

Here, Plaintiff has not pleaded any facts to state a claim for relief under any of these statutes.[11] She alleges in a conclusory manner that ECMC and the Credit Bureaus unlawfully discriminated against and harassed her on the basis of her disability, race, color, sex, national origin, and age and in retaliation of her complaining about discrimination, but she provides no facts to connect the actions of which she complains to her protected characteristics or her retaliation claim. (*See* doc. 12 at 3, 7-8, 19-21.) Without sufficient factual allegations to support her claims, Plaintiff fails to state a claim of discrimination, harassment, or retaliation under Title VI, the Age Discrimination Act, the ADA, Section 504, or Title IX, and these claims against ECMC and the Credit Bureaus should be dismissed with prejudice for failure to state a claim.

## F.    TDCPA

Plaintiff's questionnaire answers reference the Texas Debt Collection Practices Act (TDCPA), and cite Tex. Fin. Code §§ 396.352 and 396.353, which are the TDCPA provisions

---

[11]It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding pro se or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry*, 954 F.2d at 281.

related to private child support enforcement agencies. (*See* doc. 12 at 22.) To the extent she is asserting personal claims under the TDCPA, these claims arise solely under state law.[12]

Here, Plaintiff has not pleaded any facts to state a claim for relief under the TDCPA. The provisions of the Texas Finance Code she cites do not support a claim for relief in this case, as there are no allegations involving child support enforcement. Dismissal of any TDCPA claim against ECMC and the Credit Bureaus is therefore appropriate. *See Twombly*, 550 U.S. at 555.

## V. RECOMMENDATION

Plaintiff's claims, except the claim under the ECOA, against the Secretary should be **DISMISSED without prejudice** for lack of subject matter jurisdiction. Her ECOA claim against the Secretary, and her federal and state law claims against ECMC, Experian, Equifax, and TransUnion should be **DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).

---

[12]Federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Courts have the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1996). In exercising their discretion to exercise this power, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. Here, these factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims, which arise from the same "common nucleus of operative facts" involving her student loans. Requiring her to litigate these claims in state court would "necessarily require consideration by two distinct courts of the same operative fact[s]" and the "same legal issues" and would impose unnecessary expenses on the court system and the parties. *See McKee*, 2007 WL 2381246, at *4; *McCall v. Peters*, No. CIV.A. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), *aff'd by* 108 F. App'x 862 (5th Cir. 2004) (noting that in determining whether to exercise pendent or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating the case). The Court should therefore exercise supplemental jurisdiction over the state law claims.

**SO RECOMMENDED** on this 28th day of December, 2020.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

  A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

18